IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH DIVISION

| | |
|---|---|
| NAISHA TISDALE, *as Administratrix of the Estate of Christopher Tisdale, Deceased*,<br><br>Plaintiff,<br><br>vs.<br><br>PENNSYLVANIA DEPARTMENT OF CORRECTIONS, *et al.*.<br><br>Defendants, | Civil Action No. 2:23-cv-01972<br><br>Chief United States District Judge Mark R. Hornak<br><br>United States Magistrate Judge Christopher B. Brown |

<u>**REPORT AND RECOMMENDATION**</u>
<u>**ON MOTION TO DISMISS ECF No. 12**</u>

**Christopher B. Brown, United States Magistrate Judge**

**I.      Recommendation**

Christopher Tisdale ("Mr. Tisdale") was a state prisoner in custody of the Pennsylvania Department of Corrections at the State Correctional Institution ("SCI") Pine Grove when he committed suicide on November 19, 2021.  His mother, Naisha Tisdale ("Plaintiff") brings this civil rights survival and wrongful death action as the Administratrix of Mr. Tisdale's Estate.  ECF No. 1 at ¶¶ 340-47.

Plaintiff alleges that Defendants Theresa Mason ("Mason") and Gina Harrison ("Harrison") (together, the "Psychiatry Defendants") were deliberately indifferent under the Eighth Amendment to Mr. Tisdale's serious medical needs by failing to provide adequate medical care (Count I), by allowing him to remain in

1

prolonged isolation (Count I), and to his particular vulnerability to suicide (Count II), violated his due process rights under the Fourteenth Amendment, and raised corresponding claims of wrongful death and survival actions in both respects. Plaintiff also alleges various violations against the Psychiatry Defendants under the Americans with Disabilities Act, 42 U.S.C. §12132 ("ADA") (Count V).[1]

This court has subject matter jurisdiction under 28 U.S.C. § 1331 and supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367.

Presently pending before the Court is the Psychiatry Defendants' Motion to Dismiss for failure to state a claim.[2] ECF No. 12. Plaintiff has responded in Opposition and the Psychiatry Defendants have filed a Reply. ECF Nos. 28, 32. The motion is now ripe for review.

For the following reasons, it is respectfully recommended the Motion to Dismiss be denied as to Plaintiff's Eighth Amendment claims, granted in part and denied in part as to the Fourteenth Amendment claims, denied as to the Wrongful Death and Survival Claims (Counts I-II), and granted as to the ADA claim (Count V). ECF No. 12.

---

[1] There are five counts in the Complaint, however, only Counts I, II, and V relate to the Psychiatry Defendants and are the subject of the instant Motion to Dismiss.

[2] Defendants Mason and Harrison are not the only defendants in this action who are psychiatrists, but they are the only psychiatric defendants moving to dismiss.

II.   **Report**

   a. **Factual Background**

The following allegations are in the Complaint and are accepted as true with all reasonable inferences drawn in a light most favorable to Plaintiff. *Phillips v. Cnty of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008).

Mr. Tisdale, an inmate confined in the Pennsylvania Department of Corrections, committed suicide on November 19, 2021, after his parole had been denied for the third time. ECF No. 1 at ¶¶ 17-18. At the time of his suicide, he had been in solitary confinement for 171 days, and had been in and out of solitary confinement for much of the prior four years. *Id.* at ¶ 230. He had just finished his third hunger strike since 2020. *Id.* at ¶ 256. Ten days before his suicide, Mr. Tisdale removed his family and other contacts from his DOC contact list. *Id.* at ¶ 297. Mr. Tisdale committed suicide by hanging himself from his bunk-bed. *Id.* at ¶ 309.

Defendant Mason evaluated Mr. Tisdale approximately eight times between 2019 and 2021 with the last appointment being three months before Mr. Tisdale's suicide. *Id.* at ¶¶ 100; 114-15; 123; 195; 211; 218; 240. These appointments were telemedicine appointments, which Plaintiff alleges was "directly in contrast with accepted practices in the correctional setting." *Id.* at ¶ 116.

Plaintiff claims that Mr. Tisdale demonstrated suicidal behaviors or warning signs in front of Defendant Mason, including when she evaluated him after he sliced open his shoulder and side with a spoon. *Id.* at ¶¶ 187; 195-197. After that incident, she noted her disbelief that he was "truly suicidal" and that "he [did] not

3

qualify for a higher mental health treatment placement." *Id.* at ¶ 197. In June, 2021, Defendant Mason also noted Mr. Tisdale "still endorse[d] feeling suicidal with a plan to hang himself. He claim[ed] he cannot hang himself since there is no place for him to create the noose." *Id.* at ¶ 211. In July 2021, Defendant Mason opined that Mr. Tisdale was not suicidal but was instead using this as a "maladaptive coping skill" to be removed from the RHU. *Id.* at ¶ 240.

Defendant Harrison evaluated Mr. Tisdale approximately seven times between November 10, 2020 and October 19, 2021, with her last session less than one month before his suicide. *Id.* at ¶¶ 170; 181; 216; 225; 244; 258; 262. In June 2021, Defendant Harrison wrote that "patient is likely maintaining SI [suicidal ideation] for secondary gain as a maladaptive coping skill"; however, she also acknowledged "his safety cannot be ensured due to potential of impulsivity." *Id.* at ¶ 216. Defendant Harrison apparently stopped Mr. Tisdale's depression medication during his last hunger strike in August 2021 before reinstating it after the strike ended. *Id.* at ¶¶ 255; 257. In September 2021, Mr. Tisdale explicitly told her his "mental health [was being] negatively effected by being in the RHU." *Id.* at ¶ 260. One month before his suicide, Mr. Tisdale "expressed suicidal ideation" and spoke about his stress over his upcoming parole board hearing. *Id.* at ¶ 264-65. Defendant Harrison wrote this was a "maladaptive coping skill to have his needs met, patient is specifically seeking secondary gain." *Id.* at ¶ 265.

Plaintiff alleges that Defendants Mason and Harrison contributed to Mr. Tisdale's suicide because their medical evaluations did not consider his mental

4

illness and suicidal ideation and instead cleared him to stay in solitary confinement. Counts I-II. The Psychiatry Defendants argue they should be dismissed because they were not his treating psychiatrists at the time of his death, had not been for over a month, and there are no allegations linking them with Mr. Tisdale's stay in the RHU. ECF No. 13 at 5.

### b. Standard of Review

The applicable inquiry under Federal Rule of Civil Procedure 12(b)(6) is well settled. A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and can be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A defendant bears the burden of showing that a plaintiff's complaint fails to state a claim. *See Gould Elecs. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint must be dismissed if it merely alleges entitlement to relief without supporting facts. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009). This "'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary elements.'" *Phillips*, 515 F.3d at 234 (quoting *Twombly*, 550 U.S. at 556). The court need not

5

accept as true "unsupported conclusions and unwarranted inferences," *Doug Grant, Inc. v. Great Bay Casino Corp.*, 232 F.3d 173, 183–84 (3d Cir. 2000), nor a plaintiff's "bald assertions or legal conclusions." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). The court's role is limited to determining if a plaintiff is entitled to offer evidence in support of their claims – not if they will ultimately prevail. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

    **c. Discussion**

        **i. Eighth Amendment Deliberate Indifference Claims**

The Psychiatry Defendants move to dismiss Plaintiff's claims under the Eighth Amendment for deliberate indifference to Mr. Tisdale's serious medical needs (Count I) and for deliberate indifference to Mr. Tisdale's particular vulnerability to suicide (Count II). These are addressed in turn.

        **a) Deliberate Indifference to Serious Medical Needs**

The Eighth Amendment "prohibits prison officials from being deliberately indifferent to an inmate's serious medical needs." *Palakovic v. Wetzel*, 854 F.3d 209, 227 (3d Cir. 2017) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). Prison officials are deliberately indifferent if they "intentionally deny[] or delay[] access to medical care." *Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017) (citing *Estelle*, 429 U.S. 97). A medical need is "serious" if "has been diagnosed by a physician as requiring treatment or . . . is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotation omitted).

6

Plaintiff claims the Psychiatry Defendants were deliberately indifferent to Mr. Tisdale's serious medical needs on two fronts: (1) by failing to provide him with adequate mental health treatment; and (2) by "repeatedly clearing him for continued and prolonged isolation despite his mental illness." ECF No. 1 at ¶ 349.

The Psychiatry Defendants move to dismiss this claim. They argue that they provided him with sufficient mental health treatment via numerous psychiatry appointments. Even if their assessments of Mr. Tisdale's suicidal ideation were incorrect, their actions do not rise to the level of deliberate indifference. ECF No. 13 at 5-6.

Plaintiff sets forth sufficient facts at this stage that that Mr. Tisdale had a serious medical need for more robust mental health care and the Psychiatry Defendants failed to provide it. Mr. Tisdale's mental health problems were "so obvious that a lay person would easily recognize the necessity for a doctor's attention" as he repeatedly told the Psychiatry Defendants he was going to kill himself and he had not received enough therapy or the right medication. ECF No. 1 at ¶¶ 174, 196-197, 202, 211, 216, 219, 240, 244, 265. Plaintiff further alleges Defendant Mason only saw Mr. Tisdale through telemedicine appointments which was "directly in contrast with accepted practices in the correctional setting." *Id.* at ¶ 116. Further, when she did see him, she noted her disbelief that he was "truly suicidal" and that "he [did] not qualify for a higher mental health treatment placement." *Id.* at ¶¶ 197, 211. Likewise, Plaintiff claims that Defendant Harrison noted Mr. Tisdale's "safety cannot be ensured due to potential of impulsivity," but

7

also wrote that his suicidal ideation was for "secondary gain as a maladaptive coping skill." *Id.* at ¶ 216. Plaintiff further claims Defendant Harrison took Mr. Tisdale off his medication during his hunger strike and "made no effort to identify medications appropriate for his situation." *Id.* at ¶ 255.

In light of the above, and at this stage, Plaintiff has sufficiently alleged the Psychiatry Defendants were deliberately indifferent to Mr. Tisdale's serious medical need for additional mental health care. Therefore, Plaintiff has stated an Eighth Amendment claim for deliberate indifference to Mr. Tisdale's serious medical needs and it is respectfully recommended that the Court deny the Motion to Dismiss on this ground.

The Psychiatry Defendants also move to dismiss Plaintiff's claim that they were deliberately indifferent to Mr. Tisdale's serious medical needs by allowing him to remain in prolonged solitary confinement. ECF No. 13 at 5-6. The crux of their argument is that they were not personally involved in the "clearing" of Mr. Tisdale for solitary confinement and therefore are not liable in this respect. *Id.*

The Eighth Amendment prohibits prison officials from being deliberately indifferent to a prisoner's serious medical needs by knowing of and disregarding "an excessive risk to inmate health and safety." *Farmer*, 511 U.S. at 837; *Palakovic*, 854 F.3d at 227 ("To act with deliberate indifference to serious medical needs is to recklessly disregard a substantial risk of serious harm"). Courts can "infer" an official's "subjective state of mind from the fact that the risk of harm at issue is obvious, though ignored." *Williams v. Sec'y Pa. Dep't of Corr.*, 117 F.4th 503, 517

(3d Cir. 2024). Defendants "must have personal involvement," which a plaintiff can show "through allegations of personal direction or of actual knowledge and acquiescence." *Sasse v. Wetzel*, No. 21-3033, 2022 WL 1552994, at *2 (3d Cir. May 17, 2022) (citing *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)).

The Third Circuit Court of Appeals recently recognized in *Williams* that "precedents leave no room for doubt that individuals with a known history of serious mental illness have a clearly established right not to be subjected to prolonged solitary confinement without penological justification, regardless of their sentence." *Williams,* 117 F.4th at 517. *See also Porter v. Pa. Dep't of Corr.,* 974 F.3d 431, 442 (3d Cir. 2020) ("We have repeatedly recognized the severe effects of prolonged solitary confinement, as have our sister circuits and Justices of the Supreme Court"); *Palakovic*, 854 F.3d at 225 ("[W]e . . . acknowledge the robust body of legal and scientific authority recognizing the devastating mental health consequences caused by long-term isolation in solitary confinement").

Here the Complaint sufficiently alleges the Psychiatry Defendants were deliberately indifferent to and personally involved in keeping Mr. Tisdale in the RHU. Beyond the Psychiatry Defendant's evaluations where they repeatedly opined Mr. Tisdale's threats of suicide were "maladaptive coping responses" to get out of the RHU, ECF No. 1 at ¶¶ 216, 219, 240, 244, 265, the Complaint sets forth specific times the Defendants played a role in Mr. Tisdale's stay in solitary confinement. Namely, that Defendant Mason wrote in a June 2021 evaluation that Mr. Tisdale "[did] not qualify for a higher mental health treatment placement." *Id.*

9

at ¶ 211. Additionally, in July 2021, "in evaluating the psychiatric condition of Mr. Tisdale to discharge him from a Psychiatric Observation Cell to a cell in the RHU," Defendant Mason again opined his suicidal ideations were no more than "maladaptive coping strategies." *Id.* at ¶ 240. Further, Defendant Harrison did not advise that Mr. Tisdale be removed from the RHU after he specifically told her that his "mental health [was being] negatively effected by being in the RHU." *Id.* at ¶ 260.

Whether the Psychiatry Defendants' actions actually contributed to Mr. Tisdale's prolonged stay in solitary confinement is a question for discovery. But at this stage in the proceedings, Plaintiff has sufficiently alleged that the Psychiatry Defendants were involved in keeping Mr. Tisdale, an individual with a known history of serious mental illness, in prolonged solitary confinement.

Plaintiff has stated an Eighth Amendment claim for deliberate indifference to Mr. Tisdale's serious medical needs and it is respectfully recommended that the Court deny the Motion to Dismiss on those grounds.

### b) Deliberate Indifference to Mr. Tisdale's Particular Vulnerability to Suicide

Plaintiff alleges that the Psychiatry Defendants were deliberately indifferent to Mr. Tisdale's vulnerability to suicide in violation of the Eighth Amendment. Count II. Defendants argue for dismissal because they were not his psychiatrists after he transferred to a different facility from where they treated him in which he ended his life, and because there was "no indication that [Mr. Tisdale] attempted

10

suicide or engaged in self-harm at or around the time he took his own life." ECF No. 13 at 7-9.

To bring a claim for deliberate indifference to a particular vulnerability to suicide, the plaintiff must show: "(1) that the individual had a particular vulnerability to suicide, meaning that there was a strong likelihood, rather than a mere possibility, that a suicide would be attempted; (2) that the prison official knew or should have known of the individual's particular vulnerability; and (3) that the official acted with reckless or deliberate indifference, meaning something beyond mere negligence, to the individual's particular vulnerability." *Palakovic*, 854 F.3d at 223–24. *See also Talley v. Griesmer*, No. 19-3796, 2023 WL 3002742, at *2 (3d Cir. Apr. 19, 2023) (applying the same test).

This is an objective standard, meaning that "it is not necessary for the [defendant] to have a subjective appreciation of the detainee's particular vulnerability," only that they knew or should have known of the vulnerability. *Kedra v. Schroeter*, 876 F.3d 424, n. 11 (3d Cir. 2017). At the pleading stage, a plaintiff does not need to demonstrate that the suicide was "temporally imminent," instead, an individual's vulnerability to suicide "must be assessed based on the totality of the facts presented." *Palakovic*, 854 F.3d at 230.

Here, the Complaint sets forth sufficient allegations that Mr. Tisdale had a strong likelihood he would attempt suicide. First, Mr. Tisdale spoke openly about committing suicide, self-harmed by cutting himself, was on medication for depression and anxiety, went on three hunger strikes, and removed his family from

11

his contact list right before his death. ECF No. 1 at ¶¶ 171-81; 187; 190; 195-97; 211; 240; 255; 257; 265; 297. Mr. Tisdale was in solitary confinement for 171 days prior to his suicide and for much of the four years before. *Id.* at ¶ 230. As discussed above, the Third Circuit Court of Appeals recently recognized how detrimental prolonged solitary confinement can be for individuals with a history of serious mental illness. *See Williams,* 117 F.4th at 517; *Porter,* 974 F.3d at 442; *Palakovic*, 854 F.3d at 225.

Second, Plaintiff has sufficiently alleged the Psychiatry Defendants should have known about Mr. Tisdale's particular vulnerability to suicide. The Complaint lists each practitioners' therapy notes where they themselves recount that Mr. Tisdale told them he was suicidal. Defendant Mason noted that Mr. Tisdale "still endorsed feeling suicidal with a plan to hang himself," ECF No. 1 at ¶ 211, and Defendant Harrison noted Mr. Tisdale's "suicidal ideation" and that "his safety cannot be ensured due to potential of impulsivity." *Id.* at ¶ 216.

Third, Plaintiff sufficiently alleged that Psychiatry Defendants acted with deliberate indifference because each time Mr. Tisdale told them he was suicidal, they interpreted it as a "maladaptive coping skill." *Id.* at ¶¶ 190; 195-197; 216; 240; 265. The Psychiatry Defendants had opportunities to help Mr. Tisdale get the treatment he needed and yet dismissed him.

At this stage, Plaintiff has stated an Eighth Amendment deliberate indifference claim as to Mr. Tisdale's vulnerability to suicide and it is respectfully recommended that the Court deny the Motion to Dismiss on this ground.

### ii. Fourteenth Amendment Claims

The Psychiatry Defendants move for dismissal of claims Mr. Tisdale was deprived of his right to due process under the Fourteenth Amendment by "clearing Mr. Tisdale for isolation and allowing him to remain in the RHU without any meaningful review of the appropriateness of his continued stay there" as duplicative of Plaintiff's Eighth Amendment claims.  ECF No. 13 at 10;   ECF No. 28 at 19; ECF No. 1 ¶¶ 350, 354.

Plaintiff's Fourteenth Amendment claims are not entirely clear.  To the extent that Plaintiff brings a Fourteenth Amendment claim based on the same facts supporting a lack of medical care and prolonged detention in solitary confinement claims, these are duplicative of the Eighth Amendment claims. As such, they should be dismissed under *Albright*'s "more specific constitutional provision" rule since both concern whether the Psychiatry Defendants were deliberately indifferent to Mr. Tisdale's serous medical needs.  *Albright v. Oliver*, 510 U.S. 266, 288 (1994). To the extent, however, that Plaintiff's Fourteenth Amendment claims are based on independent claims that Mr. Tisdale's procedural due process rights were violated because he was not afforded a meaningful review of the appropriateness of his continued solitary confinement, such claims survive the Motion to Dismiss challenge.  *Williams*, 848 F.3d at 574.  Therefore, it is respectfully recommended that the Court grant the Motion to Dismiss to the extent the Fourteenth Amendment claims are duplicative of the Eighth Amendment claims and deny the

Motion to Dismiss to the extent the Fourteenth Amendments claims are based on independent procedural due process grounds.

### iii. Americans with Disabilities Act

Plaintiff brings a claim against the Psychiatry Defendants under Title II of the ADA (Count V). In her Brief in Opposition, Plaintiff agrees to voluntarily dismiss the ADA Claim as to the Psychiatry Defendants only. ECF No. 28 at 15.

Accordingly, it is respectfully recommended that the Court grant the Psychiatry Defendant's Motion to Dismiss on this ground. *See, e.g., Freeman v. Wetzel*, No. 17-1506, 2018 WL 7350485, at *2 (W.D. Pa. Nov. 23, 2018), *report and recommendation adopted*, No. 17-1506, 2019 WL 652413 (W.D. Pa. Feb. 15, 2019) (recommending dismissal of a party after Plaintiff agreed to voluntarily dismiss in his brief in opposition to a motion to dismiss).

### iv. Wrongful Death and Survival Claims

Lastly, the Psychiatry Defendants move for the dismissal of Plaintiff's causes of action under the Pennsylvania Wrongful Death and Survival Statutes, 42 Pa. C.S. §§8301 and 8302, respectively, ECF No. 1 at ¶¶ 340-347, because the underlying § 1983 deliberate indifference claims fail.

In Pennsylvania, "wrongful death and survival actions are not substantive causes of action; rather, they provide a vehicle through which plaintiffs can recover for unlawful conduct that results in death." *Maldet v. Johnstown Police Dep't*, No. 2:19-325, 2019 WL 2435869, at *5 (W.D. Pa. June 11, 2019). To recover under these statutes, a plaintiff "must state all the elements of a valid tort theory." *Bright v. Westmoreland Cnty.*, 380 F.3d 729, 741 (3d Cir. 2004). If the "underlying tort

theory is barred" then the "wrongful death or survival claim will fail." *Id*. Wrongful death and survival claims "have often been brought alongside § 1983 claims. § 1983 is thus recognized as a sufficient underlying basis for wrongful death and survival claims under Pennsylvania law." *Maldet*, 2019 WL 2435869 at *5.

As stated above, at this stage, Plaintiff has sufficiently alleged § 1983 deliberate indifference claims. These claims are therefore a "sufficient underlying basis" for Plaintiff's wrongful death and survival actions to continue as well at this stage. *Maldet*, 2019 WL 2435869 at *5. Therefore, it is respectfully recommended that the Court deny the Motion to Dismiss on those grounds.

## III.   Conclusion

For the reasons stated herein, it is respectfully recommended the Psychiatry Defendants' Motion to Dismiss be denied as to Plaintiff's Eighth Amendment deliberate indifference claims, Fourteenth Amendment due process claims, and Wrongful Death and Survival claims (Counts I-II) and be granted as to Plaintiff's Fourteenth Amendment deliberate indifference claims and ADA claim (Count V). It is further recommended that leave to amend the Fourteenth Amendment deliberate indifference claims be denied as futile. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008) (stating "a district court must permit a curative amendment, unless an amendment would be inequitable or futile.").

In accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72, the parties may seek review by the District Court by filing Objections to the Report and Recommendation within fourteen (14) days of the filing of this Report and

Recommendation. Any party opposing the objections shall have fourteen (14) days from the date of service of Objections to respond thereto. *See* Fed. R. Civ. P. 72(b)(2). Failure to file timely objections will constitute a waiver of appellate rights. *See Brightwell v. Lehman*, 637 F.3d 187, 193 n.7 (3d Cir. 2011).

Dated: November 1, 2024.                    Respectfully submitted,

                                            s/ Christopher B. Brown
                                            Christopher B. Brown
                                            United States Magistrate Judge

cc:     Attorneys of record
        *via ECF electronic notification*